BURRIS, Appellant, v. KARNS, Commissioner of Motor Vehicle Department, Respondent.

*October 2—October 31, 1961.*

For the appellant there was a brief by *Silverstein, Warshafsky & Rotter,* attorneys, and *Robert Silverstein* of counsel, all of Milwaukee, and oral argument by *Robert Silverstein.*

For the respondent the cause was argued by *Roy G. Mita,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

BROWN, J. We will refer to the review before Judge DRECHSLER as the DRECHSLER case and the review before Judge CANNON as the CANNON case.

Appellant submits that in both cases the parties were the same, the facts in each case were the same—the entire driving record of Burris being in evidence—and the issue was the same in both cases,—the issue being the power of the commissioner to revoke the driving license. Therefore, appellant contends that Judge DRECHSLER's decision is *res judicata* and disposes of the proceeding before Judge

CANNON. We cannot agree with this analysis. In the DRECHSLER case the issue was the revocation of the license under the point-system rule. In the CANNON case the issue is the revocation of the license regardless of the point system. Before Judge DRECHSLER no offenses were material except those resulting in convictions claimed to be within a one-year period. There were four. Before Judge CANNON all offenses within a period of nearly three years were material. There were six convictions during that time. We conclude that the decision of Judge DRECHSLER is not *res judicata* as to the result of the CANNON case.

But there is a further issue relating to the asserted power of the commissioner to revoke a driver's license under sec. 343.32 (2), Stats., ignoring his point-system rule. Power to revoke drivers' licenses was vested in the motor vehicle department by sec. 85.08 (27m), Stats. 1941, which provided:

"Whenever any operator appears by the records of the department to be an habitually reckless or negligent operator . . . or an habitual violator of any of the state traffic laws . . . the commissioner may suspend such operator's license, . . ."

Then in 1951, sec. 85.08 (27) (b) replaced the 1941 statute as follows:

"Whenever any operator appears by the records of the department to be an habitually reckless or negligent operator of a motor vehicle or to have repeatedly violated any of the state traffic laws, . . . the commissioner may suspend such operator's license."

This is identical in meaning to the first sentence of what is now sec. 343.32 (2), Stats. In 1955 the legislature added the second sentence of sec. 343.32 (2). (The statute appears in the preceding statement of facts.) Under that authority the commissioner adopted the demerit-point system now in

effect and by virtue of which he first revoked Burris' license.

Respondent contends that the second sentence of sec. 343.32 (2), Stats., added an alternative method of revocation and did not withdraw or modify any of the commissioner's power, derived under the first sentence, to revoke licenses. Respondent calls our attention to the principle that in Wisconsin the doctrine of implied repeal is not favored. In *Milwaukee County v. Milwaukee Western Fuel Co.* (1931), 204 Wis. 107, 112, 235 N. W. 545, we held that "an earlier act will be considered to remain in force unless it is so manifestly inconsistent and repugnant to the later act that they cannot reasonably stand together."

Judge DRECHSLER was concerned only with a revocation under the point-system rule but he said in his written decision that if the first sentence of sec. 343.32 (2), Stats., were to stand or be considered alone it would not pass the test of validity, since it includes no standard or guide as to what is meant by "repeatedly violated," and such essential standard or guide is provided in or by the second sentence. There is great merit in Judge DRECHSLER's comment. Is a "second offender" a repeated violator? How many and what degree of violations will move the commissioner to action? Without a rule, who can tell? The statute in its earlier form containing only the first sentence is no longer before us and we need not determine whether in that form it would "pass the test of validity," as Judge DRECHSLER questioned. But, if the commissioner had the broad power of revocation which respondent claims for him under the first sentence of sec. 343.32 (2), Stats., standing alone, and the legislature was content to let him retain it without modification, we find no possible reason for the later enactment of the second sentence providing for a rule by which revocation of a license will conform to a stated method of weighing traffic convictions by their seriousness, their number, and

their frequency. To us it seems unrealistic to contend that a legislature would specify a power to revoke licenses upon condition and at the same time leave undisturbed an unconditional power of revocation already possessed. .With the interpretation which respondent presents, the second sentence of sec. 343.32 (2) is without purpose, accomplishing nothing. We must conclude that the legislative intent must have been to modify the broad power which respondent claims the first sentence gives him and to put some certainty into the repetitive features and the character of the violations by reason of which the commissioner may revoke drivers' licenses. Accordingly, we conclude that the first and second sentences of sec. 343.32 (2) must be read together and the second modifies and restricts the first in its exercise of the power of revocation.

That being so, except for those which by statute require mandatory revocation, the commissioner has adopted a rule by which, under conditions appropriate to the rule, traffic violations are exclusively to be judged. As a matter of fact, he did so judge the violations when he first revoked Burris' license and it was only after the revocation failed to stand up because of a mistake in the computation of accumulated demerit points that he turned his back on his rule and espoused the theory that the first sentence of sec. 343.32 (2), Stats., gives him a separate right of revocation. We determine that the statute does not confer such alternative power. Therefore the order of the circuit court affirming the commissioner of the motor vehicle department's order of revocation, dated September 23, 1960, must be reversed.

*By the Court.*—Order reversed. Cause remanded with instructions to reverse the order of the commissioner of the motor vehicle department dated September 23, 1960, revoking appellant's driving license.