KENNETH LEROY BAUER, Appellant, *v.* STATE OF NEVADA, DEPARTMENT OF MOTOR VEHICLES, Respondent.

No. 15572

August 27, 1985                                    705 P.2d 623

*Virgil D. Dutt,* Reno, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Brian Randall Hutchins,* Deputy Attorney General, Carson City; *Steven F. Stucker,* Deputy, Carson City, for Respondent.

## OPINION

*Per Curiam:*

The respondent Department of Motor Vehicles (the Department) suspended the driver's license of appellant Kenneth L. Bauer for a period of one year. The suspension was predicated upon the Department's determination that Bauer was an habitual violator of traffic laws, as defined by a regulation adopted on April 29, 1982. The district court affirmed the Department's suspension, and this appeal ensued. For reasons hereafter discussed, we reverse the district court, and we direct the reinstatement of Bauer's license.

### THE FACTS

The Nevada Legislature established a demerit point system in NRS 483.470(3-7)[1] "for the purpose of identifying habitually

---

[1]NRS 483.470(3) through (7) are as follows:

    3. The department shall establish a uniform system of demerit points for various traffic violations occurring within this state affecting any holder of a driver's license issued by the department.

    4. The system must be a running system of demerits covering a period of 12 months next preceding any date on which a licensee may be

reckless or negligent drivers or habitual or frequent violators of traffic regulations." Nevada State Dep't Motor Vehicles v. Turner, 89 Nev. 514, 561, 515 P.2d 1265, 1266 (1973). The suspension of drivers' licenses for such drivers and violators had already been authorized. NRS 483.470(1) (c)-(d).

From 1941 until early 1982, the Department never relied upon NRS 483.470(1) (c)-(d) as a basis upon which to suspend drivers' licenses. In early 1982, the Department proposed regulations to provide for the suspension of the licenses of habitual violators. These regulations were never adopted by the Department even though a number of suspensions were made. To correct this problem, the Department rescinded the suspensions it had ordered under the disapproved regulations, and promulgated a new regulation which was adopted by the Department and made effective on April 29, 1982.[2]

---

called before the department to show cause as to why his driver's license should not be suspended.

5. The system must be uniform in its operation and the department shall set up a system of demerits for each traffic violation, except as provided in subsection 6, depending upon the gravity of the violation, on a scale of one demerit point for a minor violation of any traffic law to eight demerit points for an extremely serious violation of the law governing traffic violations. If a conviction of two or more traffic violations committed on a single occasion is obtained, points must be assessed for one offense, and if point values differ, points must be assessed for the offense having the greater point value. Details of the violation must be submitted to the department by the court where the conviction is obtained. The department may provide for a graduated system of demerits within each category of violations according to the extent to which the traffic law was violated.

6. A violation of the national maximum speed limit specified in 23 U.S.C. § 154 but not exceeding 70 miles per hour must not be charged against a driver in the system of demerits established under this section if the violation does not violate any other speed limit imposed by or pursuant to chapter 484 of NRS.

7. When any driver has accumulated three or more demerit points, but less than 12, the department shall notify him of this fact. If, after the department mails this notice, the driver presents proof to the department that he has successfully completed a traffic safety school course, approved by the department, for the number of hours prescribed by the course, with the approval of the department as constituting a course of instruction, the department shall cancel three demerit points from his driving record. If the driver accumulates 12 or more demerit points before completing the traffic safety school, he will not be entitled to have demerit points canceled upon completion of the course, but must have his license suspended. A person may be allowed to attend only once in 12 months for the purpose of reducing his demerit points. The three demerit points may only be canceled from a driver's record during the 12-month period immediately following the driver's successful completion of the traffic safety school.

[2]Department of Motor Vehicles Regulations Relating to Habitual Violators or Habitually Reckless and Negligent Drivers of Motor Vehicles provides, in pertinent part:

The regulation defines as an habitual violator any individual who has been convicted of twelve or more traffic violations in a four-year period of time preceding the latest conviction. The determination of habitual violator status can be based on the Department's "records or other sufficient evidence." NRS 483.470(1).

On June 28, 1982, the Department notified Bauer that he came within the definition of an habitual violator of traffic laws, and that his driving privilege was being suspended for a one-year period. The suspension was based on NRS 483.470.

Bauer requested a hearing which was held on July 22, 1982, before a Department of Motor Vehicles Hearing Officer. At the hearing, evidence was introduced, without objection, that Bauer had been convicted of fifteen moving traffic violations within a four-year period between August 27, 1978, and May 25, 1982. Thus, because his record placed him within the Department's definition of an habitual violator, the hearing officer upheld the suspension of Bauer's license.

Bauer filed a petition for review of the suspension in the

SECTION II. Habitually reckless or negligent driver.

1. The department will consider a person an habitually reckless or negligent driver of a motor vehicle when he has been convicted of six convictions of major offenses within a 4-year period preceding the most recent conviction.

2. In determining whether a person is an habitually reckless or negligent driver of a motor vehicle, a conviction will only be counted one time and will not be used for a subsequent suspension as an habitually reckless or negligent driver. A driver must be convicted at least once after the effective date of this regulation before his license may be suspended.

3. If the department determines that a driver is an habitually reckless or negligent driver, his driver's license will be suspended for 1 year.

4. As used in this section a "major offense" means an offense assigned a point value of four through eight demerits under the system of demerit points or those offenses for which a driver's license is suspended or revoked, excluding suspensions under the point system and suspensions of licenses of habitual violators of the traffic laws and habitually reckless or negligent drivers.

SECTION III. Habitual violator of traffic laws.

1. The department will consider a person an habitual violator of the traffic laws when he has been convicted of 12 or more moving violations in any state or states within a 4-year period preceding the date of the most recent conviction. If two or more violations are committed on a single occasion, only one conviction will be counted for the purposes of this regulation. In determining whether a driver is an habitual violator of traffic laws, a conviction will only be counted one time and will not be used for subsequent suspension as an habitual violator of traffic laws. A driver must be convicted at least once after the effective date of this regulation before his license may be suspended.

2. If the department determines that a driver is an habitual violator of the traffic laws, his driver's license will be suspended for 1 year.

Second Judicial District Court. The district court determined that the legislature "clearly" had given the Department the necessary authority to suspend Bauer's driver's license. Therefore, the district court affirmed the one-year suspension of Bauer's license.

## DISCUSSION

Appellant challenges the departmental regulation as contrary to the intent of the legislature in mandating a uniform demerit point system and beyond the authority of the Department to promulgate. He argues that the demerit point system was established for the purpose of identifying habitually reckless or negligent drivers or habitual or frequent violators of traffic regulations, and he bases his argument on statements of this court in Nevada State Dep't Motor Vehicles v. Turner, 89 Nev. 514, 515 P.2d 1265 (1973). He directs our attention to the fact that when the legislature amended NRS 483 in 1963 by passing Assembly Bill 207, which directed the Department to establish a uniform system of demerit points, the legislature mandated that the system be "uniform in its operation." The legislature set out in detail how the demerit point system would operate, stating that "when any licensee accumulates 12 or more demerit points the department shall suspend his license until the total of his demerits had dropped below 12 demerits in the next preceding 12 months." NRS 483.470(9).

Bauer contends that the legislature, in mandating the demerit point system, intended to provide the standards and guidelines for the determination of when an individual is an habitual violator of traffic laws. He further contends that the Department is without authority to vary by regulation the legislatively established standards. With both of his contentions, we must agree.

Our perception of the legislative intent behind the adoption of the demerit point system in 1963, as stated in Nevada State Dep't Motor Vehicles v. Turner, *supra,* remains our perception today.[3] The legislature intended that the demerit point system be the method by which NRS 483.470(1)(c) and (d) be determined. Because the subsections themselves contain no standard by which to calculate or define the term "habitual," the legislature intended the Department to use the uniform demerit point system to do so.

---

[3]We adhere to the court's language in Nevada State Dep't Motor Vehicles v. Turner, indicating the legislative intent in adding the demerit system. Additionally, we note that the situation before us is virtually identical to that in Burris v. Karns, 14 Wis.2d 431, 111 N.W.2d 509 (1961), in which the Wisconsin Supreme Court, interpreted WSA § 343.32(2) (the Wisconsin counterpart to NRS 483.470), holding that the unconditional power of the Department of Motor Vehicles to revoke a license for habitual, reckless or negligent operation or repeated violations did not survive the addition to the statute of a demerit system. The applicability of the *Burris* court's reasoning to the case at hand is striking.

Such a conclusion follows from a close reading of NRS 483.470, giving effect to all parts of the statute and all language used. Inasmuch as the legislature spelled out how the demerit point system was to operate, enumerating various scenarios leading to suspension, it must be presumed that the demerit point system was the only standard the legislature intended the Department to use in determining "habitual" status suspensions.

Accordingly, the regulations exceed the Department's authority. The district court's order is reversed, and the Department is directed to reinstate Bauer's license.